UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

JEAN LOUIS BARRETO-BAERGA,

    Plaintiff,

v.                                                     CASE NO.:  6:25-cv-00098-PGB-LHP

OSCEOLA COUNTY, FLORIDA;
MARCOS LOPEZ; DAVID CRAWFORD;
CHRISTOPHER KOFFINAS; JOSEPH
DEJESUS; ARTURO DOMINGUEZ;
and BENJAMIN MACLEAN,

    Defendants.
_____/

## DEFENDANT OSCEOLA COUNTY, FLORIDA'S
## MOTION TO DISMISS COMPLAINT

Defendant Osceola County, by and through undersigned counsel, and pursuant to the provisions of Federal Rule of Civil Procedure 12(b)(6), hereby moves the Court for an Order dismissing the Complaint, and states:

**I.    INTRODUCTION**

1. Plaintiff has sued Osceola County, Florida.

2. The Complaint asserts three counts against the County:

   - **Count X** –    Municipal liability pursuant to 42 U.S.C. § 1983

   - **Count XI** –   Respondeat superior under Florida law

- **Count XII** –   Indemnification under Florida law

These claims are subject to dismissal because Count X is a shotgun pleading; Plaintiff has not alleged the requisite statutory notice pursuant to Fla. Stat. § 768.28; and because, as a matter of Florida law, Osceola County has no authority to control the law enforcement functions of Sheriff Lopez and therefore it cannot be liable for any allegedly unconstitutional policies concerning that policy. Plaintiff has no right to indemnity from the County because there is no agency between the County and the individual deputies that could support such a claim.

## II. ALLEGATIONS

### A. The Incident

3. On February 27, 2022, at approximately 5:33 p.m., Plaintiff was riding his dirt-bike among a group near the La Terraza Sports Bar on Donegan Road in Kissimmee doing a wheelie passed Deputy Koffinas who was traveling in the opposite direction. [Doc. 1, ¶¶ 38, 43].

4. Minutes earlier, there was a report of an aggravated assault by another motorcyclist approximately a mile from La Terraza Sports Bar. [Doc. 1, ¶ 38].

5. Deputy Koffinas attempted to stop Plaintiff, but Plaintiff drove off. [Doc. 1, ¶ 44].

6. Several deputies, including Deputy Koffinas, Deputy Crawford, Deputy DeJesus, Deputy Dominguez, and Deputy Maclean, pursued Plaintiff, even

after they learned that Plaintiff was not a suspect in the aggravated assault. [Doc. 1, ¶¶ 45-52].

7. These deputies continued to pursue Plaintiff in to neighboring Orange County, and when Plaintiff stopped and was pumping gas, Deputy Crawford surreptitiously approached on foot and forcefully tackled Plaintiff to the ground. [Doc. 1, ¶¶ 60-67].

8. Gasoline poured onto the ground from Plaintiff's motorcycle. [Doc. 1, ¶ 70].

9. Once Deputy Crawford had Plaintiff pinned face down on the ground, Deputy Koffinas approached and tased Plaintiff twice. [Doc. 1, ¶ 71].

10. While Plaintiff remained pinned on the ground, Deputy De Jesus arrived on scene, smelled gasoline, and at the urging of Deputy Crawford, returned the gas pump nozzle to its dispenser. [Doc. 1, ¶¶ 74-76].

11. While Deputy Koffinas was pinning Plaintiff face down, he dropped his taser near a puddle of gasoline. [Doc. 1, ¶¶ 77-78].

12. Deputy Crawford then ostensibly picked up Deputy Koffinas's taser, yelled multiple commands for Plaintiff to surrender, and warned Plaintiff that he would be tased. [Doc. 1, ¶ 85].

13. Before Plaintiff could comply, Deputy Crawford depressed the taser trigger and the resulting electrical charge caused the spilled gasoline to ignite and engulf Plaintiff in flames. [Doc. 1, ¶¶ 89-91].

14. None of the deputies on scene, despite the obvious presence of gasoline in the immediate vicinity of Plaintiff, attempted to stop Deputy Crawford from using a taser. [Doc. 1, ¶¶ 75-77, 83, 87-88].

15. Plaintiff was severely burned and received extensive medical care as a result of his injuries. [Doc. 1, ¶¶ 100-107].

16. Deputy Crawford was charged with a crime for causing the fire with the taser. None of the other Defendant deputies were disciplined or reprimanded, and Sheriff Lopez blamed Plaintiff for the force used by OCSO deputies. [Doc. 1, ¶¶ 108-111].

### B. *Policies of Osceola County and the Osceola County Sheriff's Office*

1. Osceola County maintained, as one of its divisions, the Osceola County Sheriff's Office. [Doc. 1, ¶ 7].

2. Sheriff Lopez is Osceola County's final policymaker regarding the OCSO's policing policies and practices. [Doc. 1, ¶ 10]

3. Sheriff Lopez is the OCSO's final policy maker, and his actions and inactions are those of Osceola County. [Doc. 1, ¶ 115].

4. The OCSO has a widespread and settled custom of encouraging and authorizing deputies to commit Fourth Amendment excessive force violations in an effort to crack down on motorcycle and dirt bike riders in Osceola County who committed minor traffic violations. [Doc. 1, ¶¶ 113, 118-19].

5. After Plaintiff's incident, no changes were made to Sheriff Lopez's policy of encouraging and authorizing Fourth Amendment excessive force violations. [Doc. 1, ¶¶ 126-28].

### III. LEGAL STANDARD FOR MOTION TO DISMISS

When evaluating a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a court must take the facts alleged in the complaint as true and construe them in the light most favorable to the plaintiff. *Resnick v. AvMed, Inc.*, 693 F.3d 1317, 1321–22 (11th Cir. 2012). To survive Rule 12(b)(6) scrutiny, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Under Rule 8 of the Federal Rules of Civil Procedure, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief," and each factual allegation should be "simple, concise, and direct." Fed. R. Civ. P. 8(a)(2), (d)(1). To "state a claim to relief that is plausible on its face[,]" a plaintiff must "plead[ ] factual content that allows the court to draw the reasonable inference that the defendant is liable for

the misconduct alleged." *Iqbal*, 556 U.S. at 678 (first quoting *Twombly*, 550 U.S. at 570).

"The plausibility standard 'calls for enough fact to raise a reasonable expectation that discovery will reveal evidence' of the defendant's liability." *Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1337 (11th Cir. 2012) (quoting *Twombly*, 550 U.S. at 556). "[I]f allegations are indeed more conclusory than factual, then the court does not have to assume their truth." *Id.*

## IV.   COUNT X IS A SHOTGUN PLEADING

A complaint is a shotgun pleading if it does not "separate[e] into a different count each cause of action or claim for relief." *Weiland v. Palm Beach County Sheriff's Office*, 792 F.3d 1313, 1323 (11th Cir. 2015). Count X contains two separate claims: a *Monell* claim against Osceola County and a *Monell* claim against the Osceola County Sheriff's Office, ostensibly for the same allegedly unconstitutional custom or policy. There are numerous internal inconsistencies within Count X that, when viewed in the context of Florida law establishing independent state agencies and subdivisions, make it difficult to discern the nature of the claims asserted in Count X. For example, the Complaint alleges that all of the individual deputy defendants were operating in the course and scope of their employment for two separate state agencies:  *the County and the OCSO*. [Doc. 1, ¶¶ 11-21]. The Count also attributes the same allegedly unconstitutional custom of using excessive force to both Osceola

County and the OCSO. [Doc. 1, ¶¶ 113, 199]. The Count also alleges that Sheriff Lopez was the final policy maker for both Osceola County and the OCSO with respect to the same allegedly unconstitutional custom of using excessive force. [Doc. 1, ¶¶ 10, 123]. Plaintiff is permitted under Fed. R. Civ. P. 8(d)(3) to state as many claims as he wants to "regardless of consistency," but the Rule also requires that those claims be "separate." In this instance, where Count X contains two claims and over 120 paragraphs of allegations, the "failure to more precisely parcel out and identify the facts relevant to each claim materially increase[s] the burden of understanding the factual allegations underlying each count." *Weiland*, 792 F.3d at 1324.

Plaintiff should plead each cause of action in a separate count and incorporate only those facts that apply to apply to a cause of action instead of indiscriminately incorporating hundreds of paragraphs of factual allegations into every count against every defendant without considering whether the allegations are relevant to the claim.

### V.  COUNT X FAILS TO STATE A SECTON 1983 CLAIM

Count X seeks to hold Osceola County liable for the policy of Sheriff Lopez allegedly encouraging and promoting the use of excessive force. As a matter of Florida law, Sheriff Lopez is not the final policymaker for Osceola County with respect to the OCSO's use of force policy because the County has no authority and

responsibility over the law enforcement functions of Sheriff Lopez. This theory (attempting to hold a Florida county responsible for the law enforcement functions of the county's sheriff was advanced and rejected by the courts in *Troupe v. Sarasota County*, Florida, No. 8:02-cv-53, 2004 WL 5572030 (M.D. Fla. Jan 22, 2004) *aff'd sub nom. Troupe v. Sarasota Cty., Fla.*, 419 F.3d 1160 (11th Cir. 2005) and in *Washington v. Washington*, No. 4:15-cv-114, 2015 WL 9918155 (N.D. Fla. Nov. 24, 2015).

In this case, the issue upon which the validity of the *Monell* claim against the County turns is whether Sheriff Lopez is the final policymaker *for Osceola County* with respect to "the OCSO's policing policies and practices." [Doc. 1, ¶¶ 10, 123, 200-201].[1]

"A county's liability under § 1983 may not be based on the doctrine of respondeat superior." *Grech v. Clayton County, Ga.*, 335 F.3d 1326, 1329 (11th Cir.2003) (citations omitted). A county can never be liable under § 1983 for the acts of those officials whom a county has no authority to control. *See Turquitt v. Jefferson County*, 137 F.3d 1285, 1292 (11th Cir.1998).

To succeed on a municipal liability claim against Osceola County, Plaintiff must prove that: (1) the County has authority and responsibility over the

---

[1]The following analysis substantially replicates the analysis in *Troupe* including the citations to legal authority.

governmental function at issue, i.e., Sheriff Lopez's development of a use of force policy for OCSO deputies and, (2) Sheriff Lopez had final policymaking authority for the County concerning the alleged constitutional violations at issue. *See Grech*, 335 F.3d at 1330. "A sheriff's policy or act cannot be said to speak for the county if the county has no say in what policy or action the sheriff takes." *Id.* at 1331. In deciding whether Sheriff Lopez is the final policymaker for the County in regard to his law enforcement function, the Court must look to Florida law. *Mandel v. Doe, 888 F.2d 783*, 792 (11th Cir. 1989) (citing *Louis v. Praprotnik*, 485 U.S. 112, 124 (1988) (plurality opinion)).

The proper inquiry is control over the official with respect to the function at issue. *Grech*, 335 F.3d at 1330. In determining whether the County controls Sheriff Lopez, the Court must specifically determine whether the County, under Florida law, has control over Sheriff Lopez in his law enforcement function, particularly for the development of use of force policies. *See Grech*, 335 F.3d at 1332. In making this determination, the focus is on "control, not labels." *See id.*; *see also McMillian v. Monroe County, Ala.*, 520 U.S. 781, 786 (1997). Thus, the labeling of Florida sheriffs as "county officials" in the Florida Constitution is not determinative of whether the County has control over Sheriff Lopez in regard to the particular law enforcement function at issue in this case. *See Grech*, 335 F.3d at 1332 (finding the

Georgia Constitution's characterization of sheriffs as "county officers" not determinative).

In Florida, sheriffs are independently elected officials. Fla. Const. art. VIII § 1(d); *Abusaid v. Hillsborough Cnty. Bd. of Cnty. Comm'rs*, 405 F.3d 1298, 1305 (11th Cir. 2005). Florida law requires that the independence of such officials be preserved concerning a host of matters, including the selection of personnel and the hiring, firing, and setting salaries of such personnel. *See* Fla. Stat. § 30.53. Moreover, the manner in which Florida sheriffs are compensated is determined by state statute. *See* Fla. Stat. § 30.48. Section 30.15 of the Florida Statutes outlines the powers, obligations, and duties of Florida sheriffs. Under that section, Florida sheriffs are required to "[e]xecute all orders of the boards of county commissioners of their counties, for which services they shall receive such compensation, out of the county treasury, as said boards may deem proper" and to "[b]e conservators of the peace in their counties." Fla. Stat. § 30.15(l)(d) & (e). However, this statute does not state or even suggest that a county has a role in a sheriff's law enforcement function. The county in which a sheriff serves is given the power to determine a sheriff's overall budget, but it is given no say as to the specific expenditures of a sheriff. *See* Fla. Stat. § 30.49. A sheriff may even appeal a county's decision regarding his budget to the Executive Office of the Governor. *See* Fla. Stat. § 30.49(4). Further, the power

to suspend a sheriff from his duties is reserved for the governor, not the county officials in which the sheriff serves. *See* Fla. Const. Art. IV § 7(a).

Regarding law enforcement, the function at issue in this case, Florida sheriffs shall be "conservators of the peace in their counties." *See* Fla. Stat. § 30.15(1)(e). Thus, sheriffs in Florida act as agents for the state in enforcing the laws of the state. Notably, Florida law does not include law enforcement powers as one of the statutorily created powers of counties. *See* Fla. Stat. § 125.01. Further, under Florida law, sheriffs are the governmental entities responsible for the neglect and default of their deputies. *See* Fla. Stat. § 30.07. Counties have no role in the training or supervision of a sheriff's deputies. While the County funds the operation of the OCSO, this is insufficient to find that a county in Florida has control over the sheriff that services that county. *See Grech*, 335 F.3d at 1340 n. 25. The Supreme Court in *McMillian v. Monroe County* stated that "[t]he county's payment of the sheriff's salary does not translate into control over him, since the county neither has the authority to change his salary nor the discretion to refuse payment completely." 520 U.S. 781, 791 (1997). Similarly, counties in Florida do not have authority to change a sheriff's salary or to refuse payment completely.

In Florida, a county has no authority and control over a sheriff's law enforcement function. Like the Georgia county in *Grech*, Osceola County does not, and cannot, direct Sheriff Lopez on how to arrest a criminal, how to hire, train,

11

supervise, or discipline his deputies, what policies to adopt, or how to operate his office, much less (and most importantly for the law enforcement function at issue) how to develop use of force policies.

Under § 1983, a county is only liable for acts for which the county is actually responsible. *See Marsh v. Butler County*, 268 F.3d 1014, 1027 (11th Cir.2001) (en banc). Since Osceola County is not responsible for the law enforcement functions of Sheriff Lopez and the OCSO, Count X should be dismissed as to Osceola County. *See Troupe*, 2004 WL 5572030 at *11-*13; *Washington*, 2015 WL 9918155 at *4 (granting county's motion to dismiss claim "[b]ecause the Leon County Board of Commissioners is not responsible for the law enforcement decisions of the Sheriff").

## VI. THE COMPLAINT FAILS TO ALLEGE STATUTORY NOTICE

Count XI is a state law claim in negligence against the County for the purported negligence of Sheriff Lopez and Deputy Crawford. Florida law provides a statutory framework allowing for a limited waiver of sovereign immunity in tort actions brought against an officer, employee, or agent of the state. *See* Fla. Stat. § 768.28. The exclusive remedy for an injury or damage due to any act or omission of a public employee occurring within the scope of their public service is by action against the head of the agency in her or his official capacity. Fla. Stat. § 768.28(9)(a). This statutory framework expressly provides that written notice to the agency and state is a mandatory condition precedent to the commence of an action against the agency.

Fla. Stat. § 768.28(6)(a). Additionally, "the complaint must contain an allegation of such notice." *Menendez v. N. Broward Hosp. Dist.*, 537 So. 2d 89, 91 (Fla. 1988) (*quoting Levine v. Dade Cnty. Sch. Bd.*, 442 So. 2d 210, 213 (Fla. 1983)). Here, the Complaint contains no such allegation. "This alone requires dismissal because absent an allegation of notice, 'the complaint fails to state a cause of action.'" *City of Miami v. Alvarez*, 390 So.3d 248, (Fla. 3d DCA 2024) (citing *Menendez*, 537 So. 2d at 91).

## VII. COUNT XI FAILS TO STATE A CLAIM FOR RELIEF

Plaintiff seeks to hold Osceola County liable for the alleged tortious conduct of Sheriff Lopez and Deputy Crawford on a respondeat superior theory. The Complaint describes both as agents of Osceola County. [ Doc. 1, ¶¶ 206-07]. As a matter of Florida law, neither Sheriff Lopez nor Deputy Crawford are agents of the County. Sheriff Lopez is an "independently elected official[]" who "act as [an] agent[] for the state in enforcing the laws of the state, and Osceola County has "no authority and control over a sheriff's law enforcement function ." *Troupe*, 2004 WL 5572030 at *12-*13. Sheriff Lopez, or one of his predecessors, appointed Deputy Crawford to be a deputy thereby granting to him "the same power as the sheriff" and upon that appointment, the Sheriff assumed responsibility "for the neglect and default of [Deputy Crawford] in the execution of [his] office." Additionally, Sheriff Lopez, not Osceola County, is responsible for the neglect and default of deputy

sheriff's in the execution of their duties. *See* Fla. Stat. § 30.07 ("Sheriffs may appoint deputies to act under them who shall have the same power as the sheriff appointing them, and for the neglect and default of whom in the execution of their office the sheriff shall be responsible.").

## VIII. COUNT XII FAILS TO STATE A CLAIM FOR RELIEF

Plaintiff is seeking indemnification "for the injuries caused by the actions and inactions of Defendants Crawford, Koffinas, DeJesus, Dominguez, Maclean and Lopez." [Doc. 1, ¶ 215]. The Complaint fails to assert whether the claim derives from state or federal law. For reasons argued above there is no agency between the County and the individual deputies that could support such a claim. There is also no federal right to indemnification. *See Burton v. City of Adairsville*, No. 4:14-cv-0099, 2014 WL 12543885 (N.D. Ga. Sept. 22, 2014) (collecting cases for the proposition that no federal right to indemnification exists under § 1983).

## CONCLUSION

For the foregoing reasons, Osceola County requests that the Court dismiss Count X, Count XI, and Count XII of the Complaint.

## Rule 3.01(g) Certification

Undersigned counsel spoke with Attorney Stephen Weil regarding merits of the instant Motion and the requested relief. Attorney Weil requested additional time

to consider the legal authority cited in the memo of law and will file a response in opposition or seek consent to file an amended complaint as permitted by Rule.

Dated this 4th day of March 2025.

*s/ Brian F. Moes*              _____
BRIAN F. MOES, ESQ.
Florida Bar No.: 39403
*moes@debevoisepoulton.com*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 4th day of March, 2025, the foregoing is being served via electronic mail to the following: Antonio Romanucci, Esquire (*aromanucci@rblaw.net*), Bhavani Raveendran, Esquire (*b.raveendran@rblaw.net*), Stephen Weil, Esquire (*sweil@rblaw.net*), Romanucci & Blandin, LLC, 321 North Clark Street, Suite 900, Chicago, Illinois 60654; and Albert Jason Yonfa, Jr., Esquire (*ayonfa@pendaslaw.com*), Pendas Law Firm, 625 E. Colonial Drive, Orlando, Florida 32803, Bruce R. Bogan Esquire (*bbogan@hilyardlawfirm.com*), Hilyard, Bogan & Palmer, P.A., P.O. Box 4973, Orlando, Florida, 32802, Summer M. Barranco, Esquire (*summer@purdylaw.com),* Purdy Jolly Giuffreda Barranco & Jisa, P.A., 2455 E. Sunrise Boulevard, Suite 1216,Fort Lauderdale, Florida 33304.

*s/ Brian F. Moes*              _____
BRIAN F. MOES, ESQ.
Florida Bar No.: 39403
*moes@debevoisepoulton.com*
THOMAS W. POULTON, ESQ.
Florida Bar No.: 83798
*poulton@debevoisepoulton.com*

G. RYAN DIETRICH, ESQ.
Florida Bar No.: 1007940
*dietrich@debevoisepoulton.com*
DeBEVOISE & POULTON, P.A.
1035 S. Semoran Boulevard, Suite 1010
Winter Park, Florida 32792
Telephone:  407-673-5000
Facsimile:  321-203-4304
*Attorneys for Defendants Osceola County, Sheriff Lopez, DeJesus, and Maclean*