IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA

| | |
|---|---|
| Jean Louis Barreto-Baerga, <br><br> Plaintiff, <br><br> v. <br><br> Osceola County, Florida *et al.*, <br><br> Defendants. | Case No. 6:25-cv-00098-PGB-LHP |

**PLAINTIFF'S OMNIBUS RESPONSE TO**
**CERTAIN DEFENDANTS' RULE 12(b)(6) MOTIONS TO DISMISS**

Plaintiff Jean Louis Barreto-Baerga, by his undersigned counsel, submits this omnibus response in opposition to the Rule 12(b)(6) motions to dismiss filed by defendants Marcos Lopez (ECF 30) and Osceola County (ECF 31). For the reasons set out herein, both motions should be denied.

**I.      Relevant facts**

On February 27, 2022, Plaintiff Jean Barreto was riding a dirt bike in a large group of riders. Osceola County Sheriff's Office ("OCSO") deputies originally tried to stop him, but he drove off. For this act, OCSO deputies tracked Plaintiff using a helicopter and multiple squad cars out of their jurisdiction and into Orange County. When Plaintiff stopped at a gas station to fill up his tank, the OCSO deputies violently tackled Plaintiff. That knocked over the motorcycle, and gasoline gushed from the open tank. The deputies then began a violent effort to

subdue Plaintiff, and as gasoline pooled around them, one deputy after another used a Taser to shock Plaintiff into submission. This ignited the gasoline, which immolated Plaintiff, burning the skin off much of his body. He spent a year in the hospital and has survived, but suffered extraordinary pain and is permanently and grotesquely disfigured. ECF 1 ¶¶ 35-107; 132.

Plaintiff has sued the deputies for burning him. *Id.* Counts I-VII. He has also sued Sheriff Lopez and Osceola County, *id*. Counts VIII-XI, alleging that Sheriff Lopez, as the County's final decisionmaker, actively encouraged OCSO deputies to use dramatic and excessive force in response to low level violations, and that Sheriff Lopez was indifferent to the culture of using excessive force in response to such violations within the OCSO. *Id.* ¶¶ 22-34; 112-131. Plaintiff has also asserted an indemnification claim against the County. *Id.* Count XII.

This brief addresses the Rule 12(b)(6) motions to dismiss filed by Osceola County and Sheriff Lopez. The individual officers have not moved to dismiss.

## II.  Legal standard

To survive a 12(b)(6) motion to dismiss, a plaintiff must provide "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action," but she "does not need detailed factual allegations." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotations omitted). Instead, a complaint must contain "enough facts to state a claim to relief that is plausible on

2

its face." *Brooks v. Warden*, 800 F.3d 1295, 1300 (11th Cir. 2015) (quotation omitted). This "is not akin to a 'probability requirement'"—the plaintiff must merely allege "enough fact to raise a reasonable expectation that the discovery will reveal evidence of the claim." *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1289 (11th Cir. 2010) (quotation omitted).  In conducting this analysis, courts "view the allegations of the complaint in the light most favorable to the plaintiff; accept as true the well-pleaded allegations; and draw all reasonable inferences in the plaintiff's favor." *McCarthy v. City of Cordele, Georgia*, 111 F.4th 1141, 1145 (11th Cir. 2024).

**III.   Argument**

    **A.   What claims the defendants are *not* seeking to dismiss.**

Plaintiff notes at the outset that defendants do not seek to dismiss all the claims against them.  The individual officers do not seek dismissal of Counts I-VII. Sheriff Lopez seeks dismissal of the Count VIII supervisory liability claim made against him in his individual capacity, but not the Count X *Monell* claim made against him in his official capacity.  Osceola County does seek dismissal of the Count X's *Monell* claim against it, but only on grounds that Osceola County is the wrong defendant, not that the substance of the *Monell* claim is inadequately pleaded.  Nobody has argued that Sheriff Lopez in his official capacity is an improper *Monell* defendant.  Thus the defendants' Rule 12(b)(6) motions do not

3

seek to dismiss Plaintiff's claims against the individual officers, or his official-capacity *Monell* claim against Sheriff Lopez.

Plaintiff now turns to the defendants' arguments.

**B.     The complaint pleads a supervisory liability claim against Sheriff Lopez.**

Count VIII asserts a Section 1983 supervisory liability claim against Sheriff Lopez, in his individual capacity.  It claims *(1)* that Sheriff Lopez, who is head of the OCSO, fostered and encouraged a culture of excessive force by OCSO deputies, *see* ECF 1 ¶¶ 22-34, 121-124, and *(2)* that he was indifferent to a pattern of excessive force within the OCSO.  *Id.* ¶¶ 112-131.  These allegations, taken alone or together, both state a claim of supervisory liability.

Sheriff Lopez argues otherwise, but this mischaracterizes the law. The Sheriff argues that a supervisory liability claim must identify a "supervisor's improper custom or policy [that] results in deliberate indifference to constitutional rights," *and* it "must point to multiple incidents" of unconstitutional conduct.  ECF 30 at 7 (quotations omitted). That is wrong. A supervisor's indifference to a widespread unconstitutional practice—which requires that a widespread practice exist—is certainly one of, and perhaps the most familiar, ways to establish supervisory (and *Monell*) liability in Section 1983 cases.  But it is not the only way. As the Eleventh Circuit explained in *Harper v. Lawrence County, Alabama*, "[s]upervisory liability" ultimately focuses on the "causal connection between [a

4

subordinates' unconstitutional] conduct and the [supervisor's] actions," and there are "***three*** ways to establish such a causal connection." 592 F.3d 1227, 1236 (11th Cir. 2010) (emphasis added). *One* way is "a history of widespread abuse [that] puts the . . . supervisor on notice[.]" *Id.* (quotation omitted). But "*[a]lternatively*, the causal connection may be established when a supervisor's custom or policy results" in the violation, "*or* when . . . the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so." *Id.* (quotation omitted, emphases added). The Eleventh Circuit's Pattern Jury Instructions make the same distinction, identifying multiple ways to establish supervisory liability, phrased in the disjunctive "or" form. *See* Eleventh Circuit Court of Appeals, Civil Pattern Jury Instructions § 5.12 (April 2024).[1] Section 5.12 of the Instructions, which cites *Mathews v. Crosby*, 480 F.3d 1265, 1270 (11th Cir. 2007), *id.*, sets out multiple discrete circumstances under which a supervisor may be held liable, two of which are relevant here:

> (b)  A history of widespread abuse that . . . put [name of supervisor] on notice of the need to take corrective action and [he/she] failed to do so; *or*
>
> (c)  [Name of supervisor] intentionally implemented an "official policy or custom" that resulted in [name of subordinate] acting with deliberate indifference, meaning reckless disregard, to [name of plaintiff]'s [specify constitutional right] . . . .

---

[1] https://www.ca11.uscourts.gov/sites/default/files/courtdocs/clk/FormCivilPatternJuryInstructionsRevisedAPR2024.pdf

5

*Id.* §§ 5.12(b) & (c) (brackets original; emphasis added).

Plaintiff's complaint fits within either mold—it alleges *both* that Sheriff Lopez was indifferent to a pattern of unconstitutional violations in the OCSO, and *separately* that he fostered and encouraged a culture of excessive force within the OCSO. *Supra*. Those claims fit squarely within the different, and discrete, forms of supervisory liability that the Eleventh Circuit has articulated in *Harper* and its Pattern Jury Instructions. *Either* theory of supervisory liability—that the Sheriff encouraged excessive force, or that he was indifferent to a pattern of excessive force—is sufficiently stated in Plaintiff's complaint.

Plaintiff reviews these two separate claims in turn.

### 1. Plaintiff has adequately alleged Sheriff Lopez encouraged a custom of excessive force.

Sheriff Lopez frames the complaint as alleging merely that he promoted the "aggressive[] enforce[ment of] the law against a targeted category of criminals," and argues this is insufficient to make out the promotion of a constitutional violation. ECF 30 at 8. If that were all the complaint alleged, the Sheriff might have a point. But it is not. Plaintiff alleges, rather, that the Sheriff actively encouraged a culture of *excessive force* within the OCSO. That was done by encouraging a culture of escalating responses to minor traffic offenses such that they mirrored responses to major crimes, *see* ECF 1 ¶¶ 117-120, and encouraging a use of force that was not remotely justified by the offense at issue—the very

6

definition of excessive force. *See id.* ¶¶ 31-34; 120-124. The complaint gives an example of precisely this sort of encouragement: when his deputies sicced attack dogs on a man and ran him into a bayou at night, all for a suspected traffic violation, the Sheriff's celebrated, endorsed, and promoted this escalation tactic as an model of good policing. ECF ¶¶ 22-30. The Complaint goes on to allege that the Sheriff's encouragement of deputies to use gratuitous and dramatic force resulted in other tragic outcomes, including a wildly excessive "box" maneuver that resulted in the deaths of several young people for the suspected crime of shoplifting $46 in Pokémon cards and pizza from a Target. *Id.* ¶¶ 125-131. Plaintiff has not only alleged that Sheriff Lopez "encouraged his deputies to engage in violence and to seek out opportunities to use excessive force against persons, even where they are suspected of only minor crimes or violations," *Id.* ¶ 34, but also provided multiple examples to support the plausibility of that claim. *Id.* ¶¶ 113, 128-31. Both *Harper* and Pattern Jury Instruction § 5.12 teach that this is enough to state a supervisory liability claim.

Indeed, *Harper* is particularly instructive in this regard. *Harper* involved a claim against jail supervisors who had implemented "customs or policies of improperly screening inmates for alcohol withdrawal" and related problems. 592 F.3d at 1236. After reviewing the different forms of establishing supervisory liability (which Plaintiff has summarized *supra*), *Harper* held that the complaint's

allegations about the "customs and practices put in place by the supervisors," plus a description of a single similar incident, were enough to state a supervisory liability claim. *Id.* In reaching this holding, *Haper* noted that the plaintiff had *also* made widespread practice allegations, but said it was unnecessary to reach those claims because the policy allegations were enough. *See id.* n. 14. *Harper*'s reasoning could just as easily be applied here. Plaintiff has adequately alleged that Sheriff Lopez encouraged a custom that caused OCSO deputies to violate Plaintiff's rights and provide not one but multiple examples of such.

### 2. Plaintiff has adequately alleged Sheriff Lopez was indifferent to a pattern of excessive force.

The Complaint also alleges that Sheriff Lopez was indifferent to a culture of excessive force within the OCSO, ECF 1 ¶¶ 112-13; 133, and the complaint provides four examples of such excessive force—making five, including the instant case. *Id.* ¶¶ 113, 128-31.

The Sheriff claims these examples are insufficient. The sheriff does not make meaningful factual distinctions to argue they are dissimilar.[2] Instead, he argues that all but one of these incidents should be ignored: two of the incidents

---

[2] The Sheriff does quibble with the details of some of the other cases, *see* ECF 30 at 9, but accepting these arguments (*e.g.*, that there is no indication of a "judicial determination" in the other cases that a constitutional violation occurred, *see id.*) would require the Court to draw inferences in *the Sheriff's* favor whereas at the pleading stage, the Court's inferences must be drawn the other way around.

took place before Sheriff Lopez took office, he explains, and another took place after the incident involving Plaintiff. ECF 30 at 8-9.

      This argument misunderstands the law. Two of the incidents did take place before Sheriff Lopez assumed office, but that is merely to say that the Sheriff inherited a department that had an existing culture of using excessive force—as Plaintiff notes, *Id.* ¶ 113—and that he was indifferent to it. Plaintiff alleges that as supervisor, the Sheriff "did not seek to change the OCSO's . . . practices of using excessive force." *Id.* ¶ 116. What is more, the fact that the Target box-in shooting (*see* ECF 1 ¶¶ 128-30) occurred after Plaintiff's burning does not make it irrelevant. That is because, "[w]hile the practice or custom . . . must have existed prior to the incident involving the plaintiff for it to have been a moving force behind the plaintiff's incident, . . . . [similar] later occurring incidents . . . may contribute to the plausibility of Plaintiff's allegation that a practice or custom existed." *Karney v. City of Naperville*, No. 15-cv-4608, 2016 WL 6082354, at *11 (N.D. Ill. Oct. 18, 2016). Plaintiff's complaint alleges four other incidents of excessive force similar to Plaintiff's, along with an allegation that the Sheriff ignored these incidents and instead promoted violent activity by the OCSO. That states a supervisory liability claim at the pleading stage.

### C. The discretionary function exception does not apply to Count IX.

Count IX asserts a negligence claim against Sheriff Lopez for ignoring the OCSO's widespread practice of using excessive force against civilians, and instead encouraging it. ECF 1 ¶¶ 191-196. In seeking to dismiss this count, the Sheriff does not dispute that Plaintiff has adequately alleged negligence. *See* ECF 30 at 10-11. Instead, the Sheriff argues that he has sovereign immunity because the claims arise from his performance of a discretionary function. *Id.* at 11.

This argument is incorrect, because the discretionary function exception does not apply where discretion was used to violate constitutional rights. *See Trianon Park Condo. Ass'n, Inc. v. City of Hialeah*, 468 So. 2d 912, 919 (Fla. 1985) (recognizing discretionary function exception for certain government actions "unless they violate a constitutional or statutory provision."). The complaint alleges that Sheriff Lopez *encouraged* such violations, and was indifferent to them. The discretionary function exception does not apply.

Neither does the immunity provided for under Fla. Stat. § 768.28(9)(a), as the Sheriff claims. *See* ECF 30 at 11-12. While Section 768.28(9)(a) does establish immunity for governmental employees, the immunity is removed for willful and wanton "disregard of human rights, safety, or property." *Id.* In this case, the Complaint alleges that Sheriff Lopez both actively encouraged his deputies to commit violations of residents' constitutional rights, and was

deliberately indifferent to those violations. This is equivalent to reckless conduct, *see Williams v. City of Minneola*, 619 So. 2d 983, 986 (Fla. Dist. Ct. App. 1993) (collecting cases), which in turn is synonymous with "deliberate indifference." *Cf. Wade v. McDade*, 106 F.4th 1251, 1256–57 (11th Cir. 2024). The complaint thus alleges both that Sheriff Lopez deliberately encouraged constitutional violations, and that he was deliberately indifferent to them. Both allegations are claims that Sheriff Lopez engaged in willful and wanton misconduct. Count IX should not be dismissed.

      **D.**    **Osceola County is an appropriate municipal defendant**

Plaintiff has sued Osceola County in Count X (Section 1983 claim), and Count XI (state law respondeat superior) of the complaint. Osceola County moves to dismiss these claims. *See* ECF 31 at 7-13. The crux of the County's argument is that the "County" does not control the Sheriff. *See* ECF 31 at 8. This lack of control, it argues, means that Plaintiff cannot assert Count X's Section 1983 claim against the County, *see* ECF 31 at 8, and that he cannot assert Count XI's state law *respondeat superior* claim against the County either. *Id.* at 13-14.

There is a simple problem with this argument and the authorities that Osceola County relies upon to make it: the County's brief never interrogates what, exactly, a "county" *is* under Florida law. And under Florida law, Sheriffs, as county "officers," are components the county and are synonymous with it.

A political subdivision, including a county, is liable for the acts or omissions of its *officers*, employees, or agents. Fla. Stat. Ann. §§ 768.28(2), (9)(a) (emphasis added). The Sheriff is defined in the Florida Constitution as a "county officer" and recognized as an "integral part of the county" by the Florida Supreme Court. *Beard v. Hambrick*, 396 So. 2d 708, 711 (Fla. 1981). Indeed as the Florida Supreme Court stated in *Beard*, sheriffs are one among multiple "county officers" (including a "tax collector," "supervisor of elections," etc.), *see* 396 So. 2d at 711 (quoting Article VIII, Section 1(b) of the Florida Constitution), such that "there is no reasonable way to construe article VIII, section 1 [of the Florida Constitution], other than to include sheriffs as well as other named county officers as part of a county and, as such, within the definition of" the definition of "county" in "as used in subsection (a) of [the Florida Constitution's definition of 'counties']." *Id.* "To hold otherwise," *Beard* went on, "creates an artificial governmental entity for sheriffs and other named county officials that was not intended by either the legislature or the framers of our constitution." *Id.*

The Eleventh Circuit has followed *Beard* and held that sheriffs are county officers. *see Abusaid v. Hillsborough Cnty. Bd. of Cnty. Comm'rs*, 405 F.3d 1298, 1305 (11th Cir. 2005) (quoting *Beard*'s holding that "a sheriff is a 'county official,' and, as such, is an integral part of the 'county.' "), and as *Abusaid* itself notes, Florida "counties certainly may be—and have been—held liable for a judgment

12

against a sheriff." *Abusaid*, 405 F.3d at 1313. The decisions *Abusaid* cites for this proposition are unequivocal:

> *See, e.g.*, *Lucas v. O'Loughlin*, 831 F.2d 232, 235 (11th Cir. 1987) (holding that county was liable for judgment against sheriff in § 1983 suit for wrongful termination since, based on the structure of the office of sheriff under Florida law, the "[sheriff's] act was the act of [the] County"); *see also Jenne* [*v. Maranto*], 825 So.2d [409,] 416 [(Fla. Ct. App. 2002)]("[A]ny money judgment in this case will be paid from the local county budget or by insurance purchased therefrom by the Sheriff.").

*Abusaid*, 405 F.3d at 1313 (brackets added).

The Eleventh Circuit addressed this same issue in *Cook ex rel. Estate of Tessier v. Sheriff of Monroe County, Fla.*, 402 F.3d 1092 (11th Cir. 2005). In *Cook* the plaintiff sued the Sheriff of Monroe County, Florida pursuant to § 1983, but did not name Monroe County as a co-defendant. In addressing the claim brought pursuant to § 1983, *Cook* held that "[w]hen, as here, the defendant is the county sheriff, the suit is effectively an action against the governmental entity he represents—in this case, Monroe County." 402 F.3d at 1115. The Eleventh Circuit reiterated that holding in *Adcock v. Baca*, 157 F. App'x 118 (11th Cir. 2005), citing *Cook* for the proposition that "a suit against a county sheriff was "effectively an action against the government entity he represents-in this case, Polk County." 157 F. App'x at 119. A host of district court decisions have followed suit. *See, e.g.*, *Silcox v. Hunter*, No. 3:16-cv-1509, 2018 WL 3633251, at *4 (M.D. Fla. July 31, 2018) ("A sheriff sued in his official capacity is effectively an action against the

13

governmental entity the sheriff represents, in this case Columbia County." (citing *Cook*)); *Lenoir v. Love*, No. 3:23-cv-1476, 2024 WL 1485479, at *3 (M.D. Fla. Apr. 5, 2024) (same) *Hernandez v. Tregea*, No. 2:07-cv-149, 2008 WL 11430027, at *5 (M.D. Fla. Oct. 29, 2008) (same; collecting cases).

There is thus considerable, controlling authority—including three Eleventh Circuit decisions, *Lucas*, *Cook*, and *Abusaid*, along with *Adcock*—that a Florida sheriff, as a county officer, is constitutive of the county itself, and that the correct municipal defendant in a case arising from a Florida sheriff's conduct is the county.[3] Osceola County is plainly aware of these authorities (its brief cites *Abusaid* for a different legal proposition, *see* ECF 31 at 10), but it neither acknowledges them or engages with their holdings. Instead, Osceola County relies

---

[3] Some courts, indeed, have held that a "sheriff's office" is not a suable entity under Florida law at all. In *Briggs v. Spurlock*, No. 3:23-cv-1057, 2023 WL 8436294 (M.D. Fla. Dec. 5, 2023), the district court dismissed a Section 1983 claim against a sheriff's office, explaining, that the plaintiff had "fail[ed] to state a plausible § 1983 claim" because the "Columbia County Sheriff's Office is not an entity subject to suit." 2023 WL 8436294, at *3 (citing *Faulkner v. Monroe Cnty. Sheriff's Dep't*, 523 F. App'x 696, 701 (11th Cir. 2013) for its holding that "Florida law has not established Sheriff's offices as separate legal entities with the capacity to be sued.").

Such holdings raise a question that the County's brief does not answer: besides Osceola County, Plaintiff's complaint names Sheriff Lopez in his official capacity. "[S]uits against a municipal officer sued in his official capacity and direct suits against municipalities are functionally equivalent," *Busby v. City of Orlando*, 931 F.2d 764, 776 (11th Cir. 1991), so, what government entity does Sheriff Lopez represent—is it the "Osceola County Sheriff's Office"? *Briggs* and *Faulkner* suggest that that would be impossible, since a "sheriff's office" is not a suable entity under Florida law. The obvious answer is Osceola County. And the County's brief, notably, does not identify another suable governmental entity that should stand in Lopez's official-capacity shoes.

14

on two unpublished Florida federal district court decisions to argue that the dispositive question is whether a "county" has control over a sheriff's conduct. That argument does not withstand scrutiny, however, because it never grapples with what a Florida county *is* under the law.

 The County relies principally on *Troupe v. Sarasota County, Florida*, No. 8:02-cv-53, 2004 WL 5572030 (M.D. Fla. Jan 22, 2004).[4]  ECF 31 at 8 n.1 (noting that County's analysis "substantially replicates the analysis in *Troupe* including the citations to legal authority."). *Troupe*, however, was wrongly decided, and demonstrably so. Without guidance from *Cook* or *Abusaid*, which were decided the following year, and apparently unaware of *Lucas*, the district court in *Troupe* looked to *Grech v. Clayton County, Georgia*, 335 F.3d 1326 (11th Cir. 2003). *Grech* focused on whether a *Georgia* "county" had control over its sheriff, *see Troupe*, 2004 WL 5572030, at *11 (citing *Grech*), and thus *Troupe* treated this "control" question as the lodestar of its analysis, concluding that a Florida "county" does not control sheriffs and therefore cannot be sued for their misconduct. *Id.*  As *Abusaid* later pointed out, however, "Florida defines sheriffs and their functions very differently than Alabama or Georgia." 405 F.3d at 1305.

---

 [4] *Troupe* was upheld on appeal, *see* 419 F.3d 1160 (11th Cir. 2005), but the affirmation was on other grounds. The Court of Appeals did not analyze *Troupe*'s municipal liability holding at all, relegating that instead to a non-precedential portion of the opinion. *See* 419 F.3d at 1165 n.5 (affirming the "remaining issues" "without discussion" pursuant to 11th Circuit Rule 36–1).

*Grech*'s focus on the degree of control between Georgia sheriffs and their counties, therefore, is of little analytical value—particularly if the analysis does not begin with an assessment of what constitutes a "county" in Florida.

As Plaintiff has set forth above, *Abusaid* did conduct that analysis, and concluded, relying on *Beard*, that a Florida sheriff "is a 'county official,' and, as such, is an integral part of the 'county.' " *Id.* (quoting *Beard*). A Florida sheriff, in other words, *is* the county—or as *Beard* puts it, a sheriff is "within the definition" of what constitutes a "county" under the Florida Constitution. *Beard*, 396 So. 2d at 711. *Cook* looked directly to *Beard*'s analysis to hold that a Section 1983 suit against a Florida county sheriff is effectively a suit against the county itself, 402 F.3d at 1115, and to the extent *Troupe*'s own analysis of Florida law conflicts with that holding, *Abusaid*, *Lucas*, and *Cook* control.

The same could be said for *Washington v. Washington*, the second case put forward by Osceola County, *see* ECF 31 at 12, an unpublished decision by a magistrate judge that, like *Troupe*, also focused on control. No. 4:15-cv-114, 2015 WL 9918155 (N.D. Fla. Nov. 24, 2015), *report and recommendation adopted*, No. 4:15-cv-114, 2016 WL 335870 (N.D. Fla. Jan. 26, 2016). If anything, *Washington highlights* the problem with focusing on a "county's" control over a sheriff as an analytical guide. *Washington* was a *pro se* case that named the "Leon County Board of Commissioners" for actions taken, as relevant here, by Leon County's

sheriff.  Citing *Toupe*, the *Washington* court held that the suit had to be dismissed since "the Leon County Board of Commissioners is not responsible for the law enforcement decisions of the Sheriff," and treating the board as synonymous with the county, it dismissed the board—and the county—from the case. *Id.* at *3. *Washington*, however, failed to analyze or explain why county's board of commissioners was constitutive of the county, but the county's sheriff was not.  *Id.* at ** 2-3.  And as Plaintiff has set forth above, *Beard* and *Abusaid* teach the that *both* such entities are part of and constitutive of a "county" under Florida's Constitution.  *See supra. Washington* relies on *Toupe* for its "control" holding,[5] and like *Toupe* it is bad law to the extent it conflicts with *Cook*, *Abusaid*, and *Lucas*. Osceola County is the appropriate municipal defendant in this case, both for Plaintiff's Section *Monell* claim (Count X) and for Plaintiff's state law *respondeat superior* claim (Count XI).

### E. Count X is not a shotgun pleading.

For the reasons Osceola County is wrong to claim it is not a proper defendant, the County is also wrong to argue that Plaintiff has engaged in shotgun pleading by placing Osceola County and the Osceola County Sheriff's Office (the

---

[5] Washington does cite to another case, *Hill v. Clifton*, 74 F.3d 1150, 1152 (11th Cir.1996), *see* 2015 WL 9918155 at *3, but it is unclear why, as *Hill* did not concern counties or sheriffs, and the quotation that *Washington* attributes to *Hill* does not appear in that decision.

"OSCO") in a single count—Count X. *See* ECF 31 at 6-7. Plaintiff included Sheriff Lopez in his official capacity in the same count as Osceola County as a belt-and-suspenders measure, anticipating that one of these defendants would argue they were not appropriate municipal defendants for a Section 1983 claim. The Count X defendants, however, are alter egos of each other—they are the "local government unit[]" that is a "person[] to whom § 1983 applies." *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690 (1978). Osceola County's claim to the contrary, that "[t]here are numerous internal inconsistencies within Count X," *see* ECF 31 at 6, is grounded on the incorrect presumption that there is a legal distinction between the OCSO and Osceola County for purposes of Plaintiff's claims in this action. As Plaintiff has set forth *supra*, no such distinction exists. Count X is not a shotgun pleading.

      **F.**    **Count XI is adequately pleaded.**

Count IX and XI assert state tort law claims against Sheriff Lopez and Osceola County, respectively. Both defendants seek to dismiss these claims against them as inadequately pleaded. They do so on grounds that the claims do not allege the notice provided for in Fla. Stat. § 768.28. *See* ECF 30 at 9-10 (Lopez seeking to dismiss County IX) and ECF 31 at 12-13 (County seeking to dismiss Count XI). This argument misunderstands pleading requirements under the Federal Rules. As Section 768.28(6) makes clear, the notice requirement is not

an element of any state law claim. Fla. Stat. § 768.28(6)(b). And federal courts have repeatedly held that while pleading elements is necessary under Rule 8, identifying state law prerequisites Rule 8's requirement of a "short and plain statement" of the plaintiff's claim, jurisdictional statement, and explanation of the relief sought is "a list of elements that 'implicitly excludes other requirements.' " *Pledger v. Lynch*, 5 F.4th 511, 519 (4th Cir. 2021) (quoting *Gallivan v. United States*, 943 F.3d 291, 293 (6th Cir. 2019)). As the Eleventh Circuit has explained, Rule 8's requirement of 'a short and plain statement of the claim showing that the pleader is entitled to relief'; and (3) 'a demand for the relief sought.' By negative implication, the enumeration of this series of requirements excludes other requirements that must be satisfied for a complaint to state a claim for relief." *Carbone v. Cable News Network, Inc.*, 910 F.3d 1345, 1352 (11th Cir. 2018). Because Section 768.28(6) is not an element of Plaintiff's state law claims, it does not provide an avenue for dismissal at the pleading stage.

### G.   Indemnification is appropriate

The County seeks to dismiss Count XII, which seeks indemnification. ECF 31 at 14. This request, however, is again grounded on the incorrect argument that Osceola County is entirely separate from the Sheriff, *supra*. In reality, there *is* agency between Osceola County and the Sheriff and his officers, as set forth *supra*, because Sheriff Lopez is an officer of Osceola County. Additionally, Sheriff

Lopez, in his official capacity, *is* Osceola County for purposes of Plaintiff's Section 1983 claims. *See, e.g.*, *Busby v. City of Orlando*, 931 F.2d 764, 776 (11th Cir. 1991) ("[W]hen an officer is sued under Section 1983 in his or her official capacity, the suit is simply another way of pleading an action against an entity of which an officer is an agent. Such suits against municipal officers are therefore, in actuality, suits directly against the city that the officer represents." (quotation omitted)). Osceola County is properly named as an indemnitor, both for state law claims and to clarify the locus of financial responsibility for Plaintiff's federal claims against Lopez in his official capacity.

### IV.  Conclusion.

For the reasons set out in this memorandum the defendants' motions to dismiss should be denied.

| | |
|---|---|
| Dated: April 5, 2025 | Respectfully submitted, |
| | /s/ *Stephen H. Weil* |
| Albert Jason Yonfa, Jr. | ROMANUCCI & BLANDIN, LLC |
| Pendas Law Firm | Antonio Romanucci (Ill. Bar No. 6190290)* |
| 625 E. Colonial Dr. | Stephen H. Weil (Ill. Bar No. 6291026)* |
| Orlando Fl 32803 | 321 North Clark St., Suite 900 |
| 407-352-3535 | Chicago, Illinois 60654 |
| ayonfa@pendaslaw.com | Tel: (312) 458-1000 |
| | Email: aromanucci@rblaw.net |
| | Email: sweil@rblaw.net |
| | *\* admitted pro hac vice* |
| | *Counsel for Plaintiff* |