## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

JEAN LOUIS BARRETO-
BAERGA,

       **Plaintiff,**

**v.**                                                    **Case No: 6:25-cv-98-PGB-LHP**

OSCEOLA COUNTY, MARCOS
LOPEZ,           SHERIFF
CHRISTOPHER A. BLACKMON,
DAVID          CRAWFORD,
CHRISTOPHER      KOFFINAS,
JOSEPH  DEJESUS, ARTURO
DOMINGUEZ  and  BENJAMIN
MACLEAN,

       **Defendants.**

_____/

### <u>ORDER</u>

This cause comes before the Court on the following filings:

1. Defendant Marcos Lopez's ("**Defendant Lopez**") Motion to Dismiss Complaint (Doc. 30 (the "**Lopez Motion**"));

2. Defendant Osceola County, Florida's ("**Defendant Osceola County**") Motion to Dismiss Complaint (Doc. 31 (the "**Osceola County Motion**"));[1]

---

[1] Collectively, the Lopez Motion and Osceola County Motion will be referred to as the "Motions."

1

3.   Plaintiff Jean Louis Barreto-Baerga's ("**Plaintiff**") Omnibus Response to the Motions (Doc. 50 (the "**Response**")); and

4.   Defendant Osceola County's Reply (Doc. 60 (the "**Reply**")).[2]

Upon consideration, the Lopez Motion is due to be denied and the Osceola County Motion is due to be granted in part and denied in part.

## II.   BACKGROUND[3]

This action concerns allegations surrounding Plaintiff's arrest and an alleged custom of excessive force for minor traffic violations at the Osceola County Sheriff's Office ("**OCSO**"). (Doc. 1). On February 27, 2022, "several minutes" before 5:32 p.m., the OCSO received a report of an aggravated assault by an unidentified individual on a motorcycle[4] that was near a sports bar on Donegan Road in Kissimmee, Florida (the "**sports bar**"). (*Id.* ¶¶ 38, 41). At around 5:32 p.m., Plaintiff was with a large group of motorcyclists near the sports bar. (*Id.* ¶¶ 38–39). At around 5:33 p.m., Defendant Christopher Koffinas ("**Defendant Koffinas**"), a sheriff's deputy at the OCSO, was driving on Donegan Road and passed Plaintiff. (*Id.* ¶¶ 13, 43). Defendant Koffinas attempted to stop Plaintiff but Plaintiff drove off. (*Id.* ¶ 44). Police cars then swarmed the sports bar. (*Id.* ¶ 45). Multiple motorcyclists, including Plaintiff, dispersed. (*Id.*).

---

[2]   The Court granted Defendant Osceola County leave to file the Reply. (Doc. 59).

[3]   This account of the facts comes from Plaintiff's Complaint. (Doc. 1). The Court accepts plaintiffs' factual allegations as true when considering motions to dismiss. *See Williams v. Bd. of Regents*, 477 F.3d 1282, 1291 (11th Cir. 2007).

[4]   The Complaint uses the terms "dirt bike riders" and "motorcyclists" interchangeably. (Doc. 1, ¶¶ 38–41). For the purposes of continuity, the term motorcyclists will be used herein.

An OCSO helicopter unit began to track Plaintiff and was radioing Plaintiff's location to "multiple" OCSO officers, who then began to pursue Plaintiff. (*Id.* ¶¶ 46–47). During this pursuit, the OCSO officers were informed that Plaintiff was not the suspect in the aggravated assault since he did not match the description of the assailant. (*Id.* ¶¶ 48, 50). Defendant Koffinas heard this communication twice and continued his pursuit of Plaintiff. (*Id.* ¶¶ 51–52, 55).

About seventeen minutes later, at around 5:50 p.m., Plaintiff pulled into a gas station in Orlando, Florida and began to refuel his motorcycle. (*Id.* ¶¶ 61, 63). Then, approximately three minutes later, Defendant Koffinas and another sheriff's deputy, Defendant David Crawford ("**Defendant Crawford**"), entered the gas station, and as the Plaintiff continued to refuel his motorcycle, Defendant Crawford pinned Plaintiff face-down on the ground. (*Id.* ¶¶ 66–68). Defendant Koffinas saw gasoline on the ground pouring from Plaintiff's motorcycle and used his taser on Plaintiff anyways. (*Id.* ¶¶ 70–71). Defendant Crawford yelled, "kill the pump" to another deputy sheriff for the OCSO on the scene, Defendant Joseph DeJesus ("**Defendant DeJesus**"). Defendant DeJesus hung up the gas nozzle at the neighboring gas pump. (*Id.* ¶¶ 75–76). When Defendant Crawford tased Plaintiff for a final time, the electrical charge from the taser ignited the gas pooled around Plaintiff causing Plaintiff's body to become engulfed in flames. (*Id.* ¶¶ 90–91, 101). "One of the officers" extinguished the fire that had consumed Plaintiff's

body. (*Id.* ¶ 93). Defendant Benjamin Mclean ("**Defendant Mclean**"),[5] a deputy sheriff at the OCSO, then told Defendant Dominguez to handcuff Plaintiff. (*Id.* ¶ 97). Plaintiff was subsequently handcuffed by Defendant Dominguez. (*Id.* ¶ 98).

"An OCSO Deputy" on the scene called for two ambulances for two injured deputies.[6] (*Id.* ¶ 95). When EMTs arrived on the scene, the EMTs called for another ambulance for Plaintiff. (*Id.* ¶ 96). At no time during the arrest did Plaintiff brandish a weapon or have one in his possession. (*Id.* ¶¶ 37, 99). After this incident, Plaintiff spent one year at the Orlando Regional Medical Center in the trauma 1 ward in an intensive care unit with burns over seventy-five percent of his body. (*Id.* ¶ 104). No OCSO deputy was disciplined or reprimanded for the conduct resulting in Plaintiff's arrest. (*Id.* ¶¶ 109–10).[7]

The Complaint alleges that, prior to Plaintiff's arrest, Defendants Lopez and Osceola County (collectively, the "**Moving Defendants**") encouraged the use of excessive force against civilians for minor traffic violations. (*Id.* ¶¶ 30–34). The Complaint offers various examples of this encouragement. (*Id.* ¶¶ 22, 23–28, 30–34, 113–14). First, the Complaint describes a video posted by Defendant Lopez on social media. (*Id.* ¶ 22). The video shows, among other things, police officers pursuing a man on a motorcycle with a helicopter unit, then releasing a "police

---

[5]   Collectively, Defendant Koffinas, Defendant Crawford, Defendant DeJesus, and Defendant Mclean will be referred to as the "Defendant Deputies."

[6]   The Complaint does not specify which two deputies were injured. (Doc. 1, ¶ 95).

[7]   The Court notes that the Complaint does not indicate whether disciplinary action was taken against the various OCSO officers allegedly involved in the four other instances of use of excessive force described in the Complaint. (Doc. 1, ¶ 113(a)–(d)).

attack dog" against a man, who had to jump into a bayou to avoid being attacked by the dog. (*Id.* ¶¶ 23–28). Second, the Complaint cites at least four instances wherein excessive force was used by OCSO deputies against civilians, two of which occurred prior to Defendant Lopez being sworn in as sheriff of Osceola County. (*Id.* ¶¶ 113–14). An additional instance occurring after the incident concerning Plaintiff involved Defendant Koffinas "and several other OCSO deputies." (*Id.* ¶ 128). Defendant Koffinas performed a "box" maneuver on a car "to 'trap' several young [people] who were in [the] car in a Target Parking lot." (*Id.*). The "several young" people allegedly "shoplifted $46 worth of pizza and Pokemon cards from the Target." (*Id.* ¶ 130). Defendant Koffinas performed the "box" maneuver as "another OCSO deputy shot three people[8] in the car." (*Id.* ¶ 129). This encounter resulted in the death of a young man. (*Id.* ¶ 130).

As a result of the foregoing, Plaintiff filed the Complaint, wherein Plaintiff brings ten causes of action. (Doc. 1). For the purposes of this Order, Plaintiff brings a total of three counts against Defendant Lopez, some in his individual capacity and some in his official capacity.[9] (Doc. 1, ¶¶ 183–97). Plaintiff brings Count VIII, for supervisory liability pursuant to 42 U.S.C. § 1983, against Defendant Lopez in his individual capacity (the "**Supervisory Liability Claim**"). (Doc. 1, ¶¶ 183–

---

[8]   The Complaint does not clarify whether the OCSO deputy shot *at* the three people in the car or whether the OCSO deputy shot *all* three people in the car. (Doc. 1, ¶ 129).

[9]   The Court notes that, on February 17, 2026, the Court entered an Order substituting Defendant Sheriff Christopher A. Blackmon for Defendant Lopez as the official capacity Defendant. (Doc. 73). Because the Motions were fully briefed prior to that substitution, the Court refers to the parties as styled in the operative briefing for ease of reference. The substitution does not affect the analysis or disposition of the issues resolved in this Order.

90). Plaintiff brings Count IX against Defendant Lopez in his individual capacity for state law negligence (the "**Negligence Claim**"). (*Id.* ¶¶ 191–97). Lastly, Plaintiff brings Count X, for municipal liability pursuant to 42 U.S.C. § 1983, against Defendant Lopez in his official capacity (the "**Municipal Liability Claim**"). (*Id.* ¶¶ 198–204). Plaintiff also brings three counts against Defendant Osceola County. (*Id.* ¶¶ 198–216). Along with Defendant Lopez, Plaintiff also brings the Municipal Liability Claim against Defendant Osceola County. (*Id.* ¶¶ 198–204). Plaintiff brings Count XI for state law *respondeat superior* against Defendant Osceola County (the "***Respondeat Superior* Claim**"). (*Id.* ¶¶ 205–12). Finally, Plaintiff brings Count XII for state law indemnification against Defendant Osceola County (the "**Indemnification Claim**"). (*Id.* ¶¶ 213–16).

Now, the Moving Defendants request dismissal of the Complaint under Federal Rule of Civil Procedure 12(b)(6). (*See generally* Docs. 30, 31). The Moving Defendants argue that Plaintiff has failed to state a claim for relief as to all Counts previously identified. (*Id.*).

## III.   LEGAL STANDARD

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). Thus, to survive a motion to dismiss made pursuant to Federal Rule of Civil Procedure 12(b)(6), the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

6

A claim is plausible on its face when the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The court must view the complaint in the light most favorable to the plaintiff and must resolve any doubts as to the sufficiency of the complaint in the plaintiff's favor. *Hunnings v. Texaco, Inc.*, 29 F.3d 1480, 1484 (11th Cir. 1994) (per curiam). However, though a complaint need not contain detailed factual allegations, pleading mere legal conclusions, or "a formulaic recitation of the elements of a cause of action," is not enough to satisfy the plausibility standard. *Twombly*, 550 U.S. at 555. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations," and the court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 679; *Papasan v. Allain*, 478 U.S. 265, 286 (1986).

In sum, the court must: reject conclusory allegations, bald legal assertions, and formulaic recitations of the elements of a claim; accept well-pled factual allegations as true; and view well-pled allegations in the light most favorable to the plaintiff. *Iqbal*, 556 U.S. at 678–79.

## IV.  DISCUSSION

The Moving Defendants offer five main arguments in their Motions in favor of dismissal: (1) Plaintiff does not establish a causal connection between Defendant Lopez's conduct and the alleged constitutional violation, and in turn, cannot establish the Supervisory Liability Claim; (2) Defendant Lopez is broadly

sovereignly immune from the Negligence Claim, and failing that, Plaintiff did not allege the requisite statutory notice to allow for the Negligence Claim to be brought; (3) the Municipal Liability Claim is a shotgun-style claim and, alternatively, Plaintiff fails to state a claim for which relief can be granted as to this claim; (4) Plaintiff fails to allege the requisite statutory notice to allow for the *Respondeat Superior* Claim to be brought; and (5) the Moving Defendants are not agents of Defendant Osceola County, and thus there is no basis for the Indemnification Claim. (Doc. 30, pp. 6–14; Doc. 31, pp. 6–7, 12–13). The Court will consider each argument in turn.

### A.   The Supervisory Liability Claim against Defendant Lopez Individually (Count VIII)

Plaintiff brings the Supervisory Liability Claim against Defendant Lopez in his individual capacity. (Doc. 1, ¶¶ 183–90). However, Defendant Lopez argues that there is no causal connection between Defendant Lopez's actions and the "alleged misconduct committed by the deputies." (Doc. 30, p. 8). Therefore, the Court must look to whether Plaintiff has sufficiently well-pled factual allegations to support a causal connection between Defendant Lopez's actions and the alleged constitutional violation. (Doc. 1, ¶¶ 118–22); *Harper v. Lawrence Cnty.*, 592 F.3d 1227, 1236 (11th Cir. 2010). The constitutional violation alleged is the use of excessive force against Plaintiff. (Doc. 1, ¶¶ 118–22).

To succeed on a 42 U.S.C. § 1983 supervisory liability claim, Plaintiff must show either that the supervisor personally participated in the constitutional

violation or that there was a "causal connection between the actions of the supervising official and the alleged constitutional deprivation." *Mathews v. Crosby*, 480 F.3d 1265, 1270 (11th Cir. 2007) (quoting *Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003)). "Personal-capacity suits seek to impose personal liability upon a government official for actions he takes under color of state law." *Lewis v. Clarke*, 581 U.S. 155, 163 (2017) (citing *Hafer v. Melo*, 502 U.S. 21, 25 (1991)).  To establish individual liability under § 1983, it is sufficient to show "that the official, acting under color of state law, caused the deprivation of a federal right." *Kentucky v. Graham*, 473 U.S. 159, 166 (1985) (citing *Monroe v. Pape*, 365 U.S. 167 (1961)).

There are three ways to demonstrate a causal connection between a supervisor's actions and the alleged constitutional violation. *Mathews*, 480 F.3d at 1270. First, a causal connection may be established where there is a "history of widespread abuse" and the supervisor is "put on notice of the need to correct the alleged deprivation, and he or she fails to do so." *Id.* (quoting *Cottone*, 326 F.3d at 1360). Second, a causal connection may be established where the supervisor's customs or policy resulted in "deliberate indifference to constitutional rights." *Cottone,* 326 F.3d at 1360. Third, a causal connection may be established where "facts support an inference that the supervisor directed subordinates to act unlawfully or knew that subordinates would act unlawfully and failed to stop them from doing so." *Id.*

9

Additionally, the Eleventh Circuit has held that the causal connection must be the actual cause of the alleged constitutional injury. *Christmas v. Harris Cnty.*, 51 F.4th 1348, 1357 (11th Cir. 2022) (holding that the district court did not err in granting summary judgment because the complaint was "bereft of any allegation" that the sheriff's department "actually caused" the injuries). While a custom does not need formal approval, the plaintiff must show actual or constructive knowledge of the custom by the supervisor. *See Depew v. City of St. Marys*, 787 F.2d 1496, 1499 (11th Cir. 1986); *see also Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978). Finally, the standard for holding a supervisor liable under § 1983 in his or her individual capacity is "extremely rigorous." *Braddy v. Fla. Dep't of Labor & Emp. Sec.*, 133 F.3d 797, 802 (11th Cir. 1998).

As referenced *supra*, the second way a plaintiff can demonstrate the relevant causal connection is by showing a custom or policy resulted in "deliberate indifference to constitutional rights." *Cottone,* 326 F.3d at 1360. The Eleventh Circuit defines a "custom" as "a practice that is so settled and permanent that it takes on the force of law." *Goodman v. Kimbrough*, 718 F.3d 1325, 1335 (11th Cir. 2013). Further, the Eleventh Circuit defines a "policy" as "a decision that is officially adopted by the municipality[] or created by an official of such rank that he or she could be said to be acting on behalf of the municipality." *Sewell v. Town of Lake Hamilton*, 117 F.3d 488, 489 (11th Cir. 1997) (citing *Brown v. City of Fort Lauderdale*, 923 F.2d 1474, 1479–80 (11th Cir. 1991)).

Plaintiff alleges conduct by Defendant Lopez that Plaintiff argues shows a custom or policy sufficient to establish the required causal connection to find supervisory liability. (Doc. 1, ¶¶ 10, 22–35). Of relevance, the Eleventh Circuit has made clear that "a custom of allowing the use of excessive force . . . provides the requisite fault[,] . . . as a persistent failure to take disciplinary action against officers can give rise to the inference that a [supervisor] has ratified [the] conduct.'" *Ingram v. Kubik*, 30 F.4th 1241, 1256 (11th Cir. 2022) (quoting *Fundiller v. City of Cooper City*, 777 F.2d 1436, 1443 (11th Cir. 1985)). The Complaint alleges that Defendant Lopez did not reprimand or suspend any of the Defendant Deputies after Plaintiff's arrest. (Doc. 1, ¶¶ 110–11). Plaintiff further avers that no changes to policy were made at the OCSO after Plaintiff's arrest. (*Id.* ¶ 126). Moreover, Plaintiff points the Court to a social media post made by Defendant Lopez, which occurred after three of the alleged instances of excessive force against civilians. (*Id.* ¶¶ 22–34, 113–14). Plaintiff avers that this further demonstrates the ratification of a custom of using excessive force. (*Id.*). Of note, the instance of excessive force by OCSO deputies that resulted in one death occurred after the post. (*Id.* ¶¶ 22, 128). Given that Plaintiff has articulated several past incidents of excessive force, and taking these allegations as true, Plaintiff has adequately set forth a claim for supervisory liability against Defendant Lopez under § 1983. *See Ingram*, 30 F.4th at 1256 (citations omitted) (stating that multiple reports of alleged misconduct will allow the court to draw a reasonable inference of a causal connection between the lack of investigation and alleged constitutional violation). Because the Court finds

11

Plaintiff has sufficiently alleged a causal connection through a custom or policy, it need not address Plaintiff's other basis for establishing causation.

Thus, the Court will not dismiss the Supervisory Liability Claim (Count VIII) on this basis at this stage.

**B.      The Negligence Claim against Defendant Lopez Individually (Count IX)**[10]

Plaintiff brings the Negligence Claim against Defendant Lopez in his individual capacity.[11] Defendant Lopez asserts two reasons why he should be broadly sovereignly immune from suit and liability. (Doc. 30, p. 11). Even if Defendant Lopez is not broadly sovereignly immune, Defendant Lopez argues that the Negligence Claim lacked statutory notice, which should result in an automatic dismissal of the count. (*Id.* at p. 10). The Court will first consider Defendant Lopez's arguments regarding sovereign immunity.

---

[10]   The Court notes that neither party discusses the elements of negligence and whether those elements have been met. The parties simply discuss sovereign immunity. (*See generally* Docs. 30, 50). Therefore, the Court will not assess whether the elements of negligence have been met.

[11]   In the Complaint, Plaintiff does not expressly state whether the Negligence Claim is brought against Defendant Lopez individually or in his official capacity. (Doc. 1, ¶¶ 191–97). However, in other Counts of the Complaint, Plaintiff made the distinction between claims brought against "Defendant Lopez (in his individual capacity)" and "Sheriff Lopez (in his official capacity)." (Doc. 1, pp. 23–24). Here, the Negligence Claim is brought against "Defendant Lopez" and not "Sheriff Lopez." (*Id.* at p. 24). As a result, the Court assumes that the Negligence Claim is brought against Defendant Lopez individually.

##### 1.     *Sovereign Immunity and the Discretionary Function Exception*

First, Defendant Lopez argues that the alleged conduct falls under the discretionary function exception, rendering Defendant Lopez sovereignly immune from liability. *See* FLA. STAT. § 768.28(1); (Doc. 30, p. 11). Plaintiff avers that the discretionary function exception does not apply to the Negligence Count because Defendant Lopez violated a constitutional right. (Doc. 50, p. 10).

Under Florida law, in order for the discretionary function exception to apply, "the governmental act in question [must have] involved an exercise of executive or legislative power such that, for the court to intervene by way of tort law, it inappropriately would entangle itself in fundamental questions of policy and planning." *Cook v. Sheriff of Monroe Cnty.,* 402 F.3d 1092, 1117–18 (11th Cir. 2005) (quoting *Henderson v. Bowden,* 737 So. 2d 532, 538 (Fla. 1999)). Further, the Eleventh Circuit has held that discretionary functions include "all actions of a governmental official that (1) 'were undertaken pursuant to the performance of his duties' and (2) were 'within the scope of his authority.'" *Jordan v. Doe*, 38 F.3d 1559, 1566 (11th Cir. 1994) (quoting *Rich v. Dollar*, 841 F.2d 1558, 1564 (11th Cir. 1988)). A discretionary function is defined as the "development and planning of governmental goals and policies." *Lewis v. City of St. Petersburg*, 260 F.3d 1260, 1266 (11th Cir. 2001).

Discretionary functions of law enforcement include policymaking. *See Land v. Sheriff of Jackson Cnty., Fla.*, 85 F.4th 1121, 1130 (11th Cir. 2023) (holding that

13

the manner of training police officers is a discretionary function); *see also Lewis v. City of St. Petersburg*, 260 F.3d 1260, 1266 (11th Cir. 2001) (holding that hiring and retention of deputies is a discretionary function). Here, the Lopez Motion concludes that since Defendant Lopez is a sheriff, he is broadly sovereignly immune from liability. (Doc. 30, pp. 11–12). However, Plaintiff argues that the discretionary function exception would not apply to Defendant Lopez as the "discretion was used to violate constitutional rights." (Doc. 50, p. 10).

If the discretion was used to violate constitutional rights, the discretionary function exception would not apply to Defendant Lopez, rendering him individually liable for the alleged conduct. *See Montanez*, 889 F.3d at 1207 ("Qualified immunity shields government officials from individual-capacity suits for actions taken while performing a discretionary function so long as their conduct does not violate a 'clearly established' constitutional right.") (citation omitted). Given that Plaintiff has articulated several past incidents of excessive force, as discussed *supra*, and taking these allegations as true, Plaintiff has sufficiently pled that a custom of constitutional violations has occurred under Defendant Lopez. *See* discussion *supra* Section IV.A. Therefore, the discretionary function exception does not apply to Defendant Lopez.

> 2. *Sovereign Immunity and Individual Liability for Public Employees*

Second, Defendant Lopez argues that Florida law "generally prohibits public employees from being held individually liable in tort . . . ." (Doc. 30, p. 11). Plaintiff,

however, argues that public employees cannot claim sovereign immunity when they act with "willful and wanton 'disregard of human rights, safety, or property.'" (Doc. 50, p. 10) (quoting FLA. STAT. § 768.28(9)(a)).

While the Florida Constitution indeed names the sheriff as one of several "county officers," this constitutional designation is silent as to the allocation of liability. *See* FLA. CONST. art. VIII, § 1(d). However, under Florida law, Plaintiff must show that Defendant Lopez acted either in "bad faith," "with malicious purpose," or "in a manner exhibiting wanton and willful disregard of human rights, safety or property" to overcome sovereign immunity and allocate liability to Defendant Lopez. *See* FLA. STAT. § 768.28(9)(a).

The "bad faith" standard is equivalent to the actual malice standard. *Butler v. Gualtieri*, 41 F.4th 1329, 1336 (11th Cir. 2022). The "malicious purpose" standard encompasses conduct that "was committed with ill will, hatred, spite, or an evil intent, or the subjective intent to do wrong." *Id.* (quoting *Eiras v. Florida*, 239 F. Supp. 3d 1331, 1343 (M.D. Fla. 2017)). Further, the "wanton and willful" conduct standard is the functional equivalent of the federal standard for deliberate indifference. *See* FLA. STAT. § 768.28(9)(a); *see also Turner v. Phillips*, No. 21-12370, 2022 U.S. App. LEXIS 4179, *1, *4 (11th Cir. Feb. 15, 2022). "The federal standard for deliberate indifference amounts to recklessness, and so does the standard of 'wanton and willful' conduct under Florida law." *See Turner*, 2022 U.S. App. LEXIS 4179, at *11; *see also Farmer v. Brennan*, 511 U.S. 825, 839–40 (1994).

15

"[T]o bring a claim of deliberate indifference against a city, a plaintiff must be able to point to 'other incidents involving similar facts.'" *Vasquez v. City of Miami Beach*, 895 F. Supp. 2d 1275, 1278 (S.D. Fla. 2012) (quoting *Mercado v. City of Orlando*, 407 F.3d 1152, 1162 (11th Cir. 2005)). Establishing a pattern of constitutional violations can demonstrate "other incidents involving similar facts." *Id.* (citing *Depew v. City of St. Marys*, 787 F.2d 1496, 1499 (11th Cir. 1986)). For example, in *Rivas v. Figueroa*, No. 11-23195-Civ-SCOLA, 2012 U.S. Dist. LEXIS 55633, *1, *3, *10 (S.D. Fla. April 20, 2012), the court held the deliberate indifference standard was met when plaintiff alleged multiple instances of excessive force without disciplinary repercussions.

Here, Plaintiff alleges that Defendant Lopez both actively encouraged and was deliberately indifferent to constitutional violations. (Doc. 50, pp. 10–11). The Complaint pleads facts sufficient to show Defendant Lopez, in his individual capacity, acted with recklessness. *See Turner*, 2022 U.S. App. LEXIS 4179, at *11. The Complaint cites multiple instances of past use of excessive force throughout the OCSO, a social media post that promotes the use of excessive force, as well as the lack of disciplinary action after Plaintiff's arrest, which, together, satisfy the deliberate indifference standard. (Doc. 1, ¶¶ 113–14, 22, 109–10); *see also Vasquez*, 895 F. Supp. 2d at 1278. Plaintiff has pled sufficient factual allegations, at this stage, to plausibly allege that Defendant Lopez acted with reckless indifference. Accordingly, sovereign immunity is inapplicable to Defendant Lopez.

16

### 3. *Statutory Notice Requirement*

Defendant Lopez argues that statutory notice, under Florida Statute § 768.28(6), is "a mandatory condition precedent to the commence[ment] of an action against the agency." (Doc. 30, p. 10). Plaintiff argues that Federal Rule of Civil Procedure 8 precludes the statutory requirement of notice for suits filed in federal court. (Doc. 50, p. 19).

Indeed, Florida Statute § 768.28 requires that statutory notice "of suit be given to the political subdivision being sued to benefit from the statute's sovereign immunity waiver." *Mack v. Lee Mem'l Health Sys.*, No. 2:23-cv-00188-JLB-NPM, 2025 U.S. Dist. LEXIS 187287, *1 n.2 (M.D. Fla. Sep. 24, 2025) (citation omitted). The notice requirement must also be strictly construed. *Menendez v. N. Broward Hosp. Dist.*, 537 So. 2d 89, 91 (Fla. 1988). However, the statutory notice requirement "does not apply to claims brought against defendant police officers in their individual capacities." *Lundgren v. McDaniel*, 814 F.2d 600, 605 (11th Cir. 1987) (citing *Hucker v. City of Oakland Park*, 427 So. 2d 244 (Fla. 4th DCA 1983)). Here, the Negligence Claim is brought against Defendant Lopez in his individual capacity. Accordingly, the statutory notice requirement is inapplicable to Defendant Lopez.

Therefore, the Court will not dismiss the Negligence Claim (Count IX) on this basis at this stage.

### C.    Possible Negligence Claim against Defendant Lopez in his Official Capacity (Count IX)

For the reasons stated above,[12] the Court assumes Plaintiff intended to bring the Negligence Claim against Defendant Lopez in his individual capacity. To the extent Plaintiff also intended to bring this claim against Defendant Lopez in his *official capacity*, the Court notes that its sovereign immunity analysis would lead to the same outcome. Specifically, the discretionary function exception would still not apply, as Plaintiff has alleged a custom or policy that violated a constitutional right. *See* FLA. STAT. § 768.28(1); *see also Montanez v. Carvajal*, 889 F.3d 1202, 1207 (11th Cir. 2018). Similarly, Plaintiff would have pled sufficient factual allegations to plausibly assert that Defendant Lopez acted with deliberate indifference to Plaintiff's constitutional rights. *See Cottone,* 326 F.3d at 1360. Accordingly, Defendant Lopez's argument that he is shielded from the Negligence Claim by sovereign immunity would still fail.

Importantly, however, if Plaintiff intended to bring the Negligence Claim against Defendant Lopez in his official capacity, the claim would be subject to the statutory notice requirements set forth in Florida Statute § 768.28. *See* FLA. STAT. § 768.28(6)(a)–(b). Moreover, Plaintiff concedes he has not alleged compliance with these requirements as Plaintiff avers that the statutory notice requirement is inapplicable under Federal Rule of Civil Procedure 8. (Doc. 50, pp. 18–19) ("By negative implication, the enumeration of this series of requirements excludes other

---

[12]    *See* supra note 11.

requirements that must be satisfied for a complaint to state a claim for relief."). Accordingly, to the extent Plaintiff intended to bring a claim against Defendant Lopez in his official capacity, the Court grants Plaintiff leave to replead to (1) clarify that he intended to bring such a claim, and (2) allege compliance with the statutory notice requirements, assuming Plaintiff has a basis for doing so.

### D. The Municipal Liability Claim against Defendant Osceola County and Defendant Lopez in his Official Capacity[13] (Count X)

Defendant Osceola County argues that the Municipal Liability Claim is a shotgun-type claim for two reasons. (Doc. 31, pp. 6–7). First, Defendant Osceola County argues that Plaintiff fails to distinguish between Defendant Osceola County and the OCSO. (*Id.*). Second, Defendant Osceola County argues that by repleading 122 paragraphs of facts, Plaintiff "materially increased" its "burden of understanding the factual allegations underlying each count." (*Id.*) (citation omitted). Plaintiff, however, avers that the Municipal Liability Claim is not a shotgun pleading because there is not a legal distinction between "the OCSO and Osceola County for purposes of Plaintiff's claims in this action." (Doc. 50, p. 18).

Defendant Osceola County then argues that Plaintiff failed to adequately state a Section 1983 municipal liability claim as Defendant Osceola County lacks

---

[13]    The Lopez Motion does not ask this Court to dismiss the Municipal Liability Claim against Defendant Lopez in his official capacity. (*See* Doc. 30, p. 2). However, Defendant Osceola County's shotgun pleading argument implicates the entirety of Count X. (*See* Doc. 31, pp. 1, 7–12).

sufficient control over Defendant Lopez to consider him a final policymaker for law enforcement functions. (Doc. 31, pp. 7–8). Plaintiff argues that, under Florida law, a Sheriff is a county officer, making Defendant Lopez a final policymaker for Defendant Osceola County for law enforcement functions. (Doc. 50, pp. 11–12). The Court will consider each argument.

### 1.    *Shotgun Pleading*

In *Weiland v. Palm Beach County Sheriff's Office*, 792 F.3d 1313, 1321–24 (11th Cir. 2015), the Eleventh Circuit outlined four types of shotgun pleadings. First, and most commonly, a shotgun pleading can consist of a complaint with multiple counts "where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before . . . ." *Id.* at 1321. Second, a shotgun pleading can be one where a complaint does not "commit the mortal sin of re-alleging all preceding counts but is guilty of the venial sin of being replete with conclusory, vague, and immaterial facts . . . ." *Id.* at 1322. Third, a shotgun pleading can be one where each cause of action is not separated into its own count. *Id.* at 1323. Finally, a shotgun pleading can be one where the complaint alleges multiple counts against multiple defendants but does not specify which defendant is associated with each count. *Id.*

The *Weiland* court further explained that a shotgun pleading does not include "a situation where a failure to more precisely parcel out and identify the facts relevant to each claim *materially increased* the burden of understanding the factual allegations underlying each count." *Id.* (emphasis added). The Eleventh

20

Circuit has gone so far as to say a shotgun pleading occurs when "it is *virtually impossible* to know which allegations of fact are intended to support which claim(s) for relief." *Anderson v. Dist. Bd. of Trs. of Cent. Fla. Comty. Coll.*, 77 F.3d 364, 366 (11th Cir. 1996) (emphasis added).

That is simply not the case here. While the Municipal Liability Claim realleges paragraphs one through 122, the paragraphs following the re-allegations state the facts that are intended to support each count.[14] (Doc. 1, pp. 17–27). This Court was able to discern which allegations of fact were intended to support which count.

Therefore, the Court will not dismiss the Municipal Liability Claim on shotgun pleading grounds at this time.

### 2. *Failure to State a Municipal Liability Claim*

To succeed under a § 1983 municipal liability claim, Plaintiff must prove that an "'action pursuant to official municipal policy' caused [Plaintiff's] injury." *Connick v. Thompson*, 563 U.S. 51, 60 (2011) (quoting *Monell*, 436 U.S. at 691). In official-capacity suits under § 1983, the Supreme Court has consistently held that the entity must be the "moving force behind the [constitutional] deprivation." *Polk Cnty. v. Dodson,* 454 U.S. 312, 326 (1981).  Accordingly, the municipality's "'policy

---

[14]   Of note, Defendant Osceola County did not argue that the Supervisory Liability Claim, the *Respondeat Superior* Claim, and the Indemnification Claim were all shotgun-type claims even though the Complaint realleges paragraphs one through 122 for all three Counts. (Doc. 31, p. 2; Doc. 1, ¶¶ 198, 205, 213).

or custom' must have played a part in the violation of federal law." *Id.* (citations omitted); *see also Oklahoma City v. Tuttle*, 471 U.S. 808, 817–18 (1985).

Local government policy can come in different forms. The most common example is the enforcement of an officially promulgated policy such as an ordinance, rule, regulation, code, or a decision rendered by a policymaker. *See City of St. Louis v. Praprotnik*, 485 U.S. 112, 123 (1988) (plurality opinion). Less-than-formal policies may also cause constitutional violations that subject a local government to liability. For example, a local government can be held liable under § 1983 when the plaintiff's constitutional injuries were caused by an unofficial custom or practice of the local government that is so well-settled that it "takes on the force of the law." *McDowell v. Brown*, 392 F.3d 1283, 1290 (11th Cir. 2004).

Similar to supervisory liability under § 1983, to state a claim for municipal liability, "a plaintiff must allege facts showing that the supervisor was either personally involved in the alleged constitutional violation or that the supervisor's actions caused the violation." *Watkins v. Willson*, 824 F. App'x 938, 941 (11th Cir. 2020).[15] Specifically, "the plaintiff must show that a final policymaker (1) ratified unconstitutional conduct, or (2) delegated policymaking authority to a subordinate such that the subordinate's discretionary decisions [were] not constrained or subject to further review." *Andrews v. Marshall*, 845 F. App'x 849, 857 (11th Cir. 2021).

---

[15]   "Unpublished opinions are not controlling authority and are persuasive only insofar as their legal analysis warrants." *Bonilla v. Baker Concrete Const., Inc.*, 487 F.3d 1340, 1345 (11th Cir. 2007).

Defendant Osceola County concludes that Defendant Lopez is not the final policymaker of the OCSO's use of force policy "because [Defendant Osceola County] has no authority and responsibility over the law enforcement functions of [Defendant Lopez]." (Doc. 31, p. 8). While Defendant Osceola County indicates that the question turns on county control of the sheriff, it also relies solely on law concerning Alabama and Georgia sheriffs. (*Id.* at p. 9). For example, Defendant Osceola County cites to *Grech*, which was decided using a Georgia law definition of Georgia sheriffs and their functions. *Grech v. Clayton Cnty.*, 335 F.3d 1326, 1331 (11th Cir. 2003) ("[O]ur examination of Georgia law must center on whether counties in Georgia have control over sheriffs."); (*see also* Doc. 31, p. 8).

While municipality liability is a matter of federal law, the determination of who is the final policymaker "is guided by state law." *McMillian v. Monroe Cnty.*, 520 U.S. 781, 784 (1997). Since "Florida defines sheriffs and their functions very differently than Alabama or Georgia[,]" the Court must look to Florida law to determine how Florida sheriffs and their roles are defined. *Abusaid v. Hillsborough Cnty. Bd. of Cnty. Comm'rs*, 405 F.3d 1298, 1305 (11th Cir. 2005).

"Florida municipalities and municipal agencies enjoy sovereign immunity." *Fluid Dynamics Holdings, LLC v. City of Jacksonville*, 752 F. App'x 924, 925 (11th Cir. 2018) (citations omitted). However, Florida Statute § 768.28 provides a waiver of sovereign immunity from tort suits. *Id.* This waiver "extends to any state 'agencies or subdivisions,' defined to include 'counties and municipalities.'" *Id.* (citing FLA. STAT. § 768.28(1)–(2)). In *Beard v. Hambrick*, 396 So. 2d 708, 711

23

(Fla. 1981), the Florida Supreme Court made clear that the Florida Legislature had intended to include sheriffs "under the provisions of § 768.28." Therein, the Florida Supreme Court found "that a sheriff is a 'county official,' and, as such, is an integral part of the 'county' as a 'political subdivision' and that section 768.28 is applicable to sheriffs as a separate entity or agency of a political subdivision." *Id.*

Moreover, the Eleventh Circuit has held that a Florida sheriff is a policymaking official for the county. *See Lucas v. O'Loughlin*, 831 F.2d 232, 235 (11th Cir. 1987); *see also Abusaid*, 405 F.3d at 1305, 1313. The Eleventh Circuit has even held that a § 1983 claim could be brought against the county in which the sheriff served when the county was not named as a defendant. *See Cook*, 402 F.3d at 1115 (citation omitted) ("When, as here, the defendant is the county sheriff, the suit is effectively an action against the governmental entity he represents—in this case, Monroe County."); *see also Adcock v. Baca*, 157 F. App'x 118, 119 (11th Cir. 2005) (holding that a suit against a sheriff was "effectively an action against the governmental entity he represents—in this case, Polk County."). Finally, the Eleventh Circuit has repeatedly found that Florida sheriffs are county officers. *Freyre v. Chronister*, 910 F.3d 1371, 1381 (11th Cir. 2018) ("[W]e have repeatedly acknowledged that Florida sheriffs are, by default, county officers.").

Defendant Lopez, in his official capacity, is the final policymaker for Defendant Osceola County. Applying *Andrews*, Plaintiff alleges sufficient instances to plausibly support that Defendant ratified the use of excessive force against civilians. *See* 845 F. App'x at 857; (Doc. 1, ¶¶ 30–34, 22–28, 113–14). At

24

this stage of the litigation, Plaintiff is not required to assert allegations with more specificity than is currently pled. *See Leatherman v. Tarrant Cnty. Narcotics Intel. & Coordination Unit*, 507 U.S. 163, 165 (1993) (holding that a federal court may not apply a heightened pleading standard to a claim for municipal liability). Given that Plaintiff has articulated multiple past incidents of excessive force, and taking these allegations as true, Plaintiff has adequately set forth a claim for municipal liability against Defendant Osceola County under § 1983.

Therefore, the Court will not dismiss the Municipal Liability Claim (Count X) on this basis at this stage.

### E.  The *Respondeat Superior* State Law Claim against Osceola County (Count XI)

In the Osceola County Motion, Defendant Osceola County argues that statutory notice was not satisfied before the suit was filed in court, and thus the *Respondeat Superior* Claim should be dismissed. (Doc. 31, p. 12–13); *see* FLA. STAT. § 768.28(6)(a). Conversely, Plaintiff argues that statutory notice is not required in federal court to plead a claim for *respondeat superior*. (Doc. 50, pp. 18–19).

"*Respondeat superior* . . . will not attach under § 1983." *City of Canton v. Harris*, 489 U.S. 378, 385 (1989). However, Plaintiff seeks to impose *respondeat superior* liability under state law. (Doc. 1, p. 25). Florida law allows a plaintiff to recover against a municipality for the tortious acts of its employees based on the doctrine of *respondeat superior*. *See* FLA. STAT. § 768.28; *see also Laster v. City of*

*Tampa Police Dep't*, 575 F. App'x 869, 872 (11th Cir. 2014). However, statutory notice is required for a *respondeat superior* claim to move forward in state court. *See* FLA. STAT. § 768.28(6)(a). Again, the notice requirement must be strictly construed. *Menendez*, 537 So. 2d at 91.

"Both Florida and federal courts have recognized that dismissal without prejudice is appropriate for claims that run afoul of [Florida Statutes § 768.28]." *Gluck v. Hospodavis*, No. 14-61385-CIV-COHN/SELTZER, 2014 U.S. Dist. LEXIS 130931, *1, *3 (S.D. Fla. Sep. 18, 2014) (quoting *Diversified Numismatics, Inc. v. City of Orlando*, 783 F. Supp. 1337, 1347 (M.D. Fla. 1990)). "A complaint that is brought without first providing statutory notice must be dismissed with leave for plaintiff to amend his complaint to allege compliance with the notice requirement." *Id.* at *4. Plaintiff did not first serve statutory notice to Defendant Osceola County before bringing the suit in federal court.

Therefore, the Court will dismiss the *Respondeat Superior* Claim (Count XI) without prejudice and with leave to replead, assuming Plaintiff has a basis for doing so.

**F.    The Indemnification Claim against Defendant Osceola County (Count XII)**

Plaintiff seeks indemnification by Defendant Osceola County for the actions of the Defendant Deputies. (Doc. 1, ¶¶ 213–16). The Osceola County Motion requests dismissal of the Indemnification Claim for failure to state a claim for which relief may be granted. (Doc. 31, p. 14). Plaintiff argues, however, that the

Defendant Deputies are individual agents of Defendant Osceola County, allowing for indemnification. (Doc. 50, pp. 19–20). Ultimately, Defendant Osceola County does not sufficiently brief its argument seeking dismissal of the Indemnification Claim. Instead, Defendant Osceola County concludes that the Defendant Deputies are not agents of Defendant Osceola County without providing a sound legal basis in support of this conclusion. (Doc. 31, p. 14). All that Defendant Osceola County offers as support for this conclusion is that there is no federal right to indemnification. (*Id.*).

As the Osceola County Motion does not adequately address the issue of indemnification, the Court declines to dismiss the Indemnification Claim (Count XII) on this basis at this stage.

## V.   CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1.   Defendant Marcos Lopez's Motion to Dismiss Complaint (Doc. 30) is **DENIED**.

2.   Defendant Osceola County, Florida's Motion to Dismiss Complaint (Doc. 31) is **GRANTED IN PART** and **DENIED IN PART**.

   a.   Count XI of the Complaint is **DISMISSED WITHOUT PREJUDICE**.

   b.   Defendant Osceola County, Florida's Motion to Dismiss Complaint (Doc. 31) is **DENIED** in all other respects.

3.    On or before **April 13, 2026**, Plaintiff may file an amended complaint consistent with the directives of this Order, if he believes he can do so in accordance with Federal Rule of Civil Procedure 11. If Plaintiff fails to timely file an amended complaint in accordance with this Order, then the current Complaint (Doc. 1) shall remain the operative pleading. As such, Count IX will state a claim only against Defendant Marcos Lopez in his individual capacity and not in his official capacity and Count XI shall remain dismissed without prejudice.

**DONE AND ORDERED** in Orlando, Florida on March 29, 2026.

PAUL G. BYRON
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties

28